**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ZAKIA MONIQUE GILYARD<br>3616 Old York Road<br>Philadelphia, PA 19140 | CIVIL ACTION |
| Plaintiff,<br>v. | CASE NO.: |
| TEMPLE UNIVERSITY-OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION d/b/a TEMPLE UNIVERSITY<br>1852 N 10th Street<br>Philadelphia, PA 19122 | **TRIAL DEMANDED** |
| Defendant. | |

## CIVIL ACTION COMPLAINT

Zakia Monique Gilyard (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against Temple University-of the Commonwealth System of Higher Education (hereinafter referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000, *et. seq*.), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.), the Family and Medical Leave Act ("FMLA – 29 U.S.C. §2601 *et seq*.), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff asserts, *inter alia*, that she experienced unlawful

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under Title VII and the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under Title VII and the ADA.

workplace discrimination and retaliation, culminating in her termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under Title VII, the ADA, and the FMLA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's future state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit under Title VII and the ADA within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Temple University-of the Commonwealth System of Higher Education is a public state-related research university in Philadelphia, Pennsylvania, with headquarters located at above-captioned address.

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was hired by Defendant on or about July 15, 2024, for the position of Overnight Housekeeping Supervisor and held the same position until her unlawful termination (discussed further *infra*) on or about July 15, 2025.

12. During her employment with Defendant, Plaintiff was supervised by various members of Defendant's management, including but not limited to: Facility Supervisor, Lisa Grass (hereinafter "Grass"); Director, Steven Witherspoon (hereinafter "Witherspoon"); Senior Superintendent, Antony "Charles/Tony" Samuels (hereinafter "Samuels"); Superintendent, Robert Vega (hereinafter "Vega"); Regional Director, Michael Juhas (hereinafter "Juhas"); and Gordon Thomas (hereinafter "Thomas").

13. Another relevant member of management to Plaintiff's claims herein was Director, Workers Compensation & Absence management, Thomas "Tom" Johnston (hereinafter "Johnston").

14. Throughout Plaintiff's employment with Defendant, she was a hard-working employee who performed her job responsibilities in a dutiful and highly competent manner, without being subjected to a history of progressive discipline.

**-Gender Discrimination-**

15. Plaintiff is an adult female who identifies as a lesbian, which falls within the umbrella term LGBTQ+.

16. From the onset of Plaintiff's employment with Defendant, she was subjected to discrimination and disparate comments and conduct because of her gender and/or sexual orientation, such that it created a hostile work environment.

17. For example, **during the first week** of Plaintiff's employment with Defendant, her supervisor, Witherspoon, accused Plaintiff of having an inappropriate sexual relationship in response to an alleged rumor involving a male employee with whom Plaintiff did **not** have a relationship.

18. Notably, Witherspoon did not accuse any of Plaintiff's male co-workers of having inappropriate relationships or treat them in such a hostile and demeaning way.

19. Plaintiff was forced to explain to Witherspoon that she did not have a relationship with the aforementioned male employee as a result of her aforesaid sexual orientation (lesbian), Witherspoon reacted negatively ***and displayed visible disgust.***

20. Thereafter, Witherspoon gave Plaintiff the cold shoulder and dismissed and/or ignored any interaction with Plaintiff, making it very clear to her that her sexual orientation was abhorrent to Witherspoon, and set the tone for subsequent treatment.

21. Witherspoon's discriminatory and hostile treatment reached its zenith when at or about the end of September of 2024, he unilaterally changed and/or assigned substantially more work to Plaintiff than any of her co-workers.

22. For example, Plaintiff's work schedule was changed from the Monday-Friday schedule she was hired for to a Wednesday-Monday (the "Weekend Shift"), a schedule widely regarded as the "difficult shift."

23. Moreover, Defendant's employees including Samuels and Witherspoon routinely (as often as every other week), made derogatory sexual orientation-based comments/slurs to Plaintiff, including referring to Plaintiff as "gay ass" and "gay bitch." Samuel additionally discussed that he had "gay phobia."

24. The aforementioned statements regarding Plaintiff's sexual orientation were unwelcome, offensive, and created such an ongoing hostile work environment that it affected Plaintiff's ability to perform her job duties.

25. Plaintiff did her best to ignore the derogatory sexual-orientation based comments/conduct, clearly showing her discomfort through body language and objections, until she could no longer tolerate the hostile work environment she was being subjected to and reached out to Samuels in or about April of 2025.

26. Specifically, Plaintiff approached Samuels, in person, to request a meeting with him, Juhas, and Witherspoon in an attempt to resolve the ongoing discrimination/harassment

Plaintiff was experiencing from Witherspoon and Samuels because of her gender/sexual orientation.

27. In response to Plaintiff's request for assistance with her aforesaid complaints about gender/sexual orientation discrimination and hostile work environment, Samuels responded by informing Plaintiff it was impossible for her to meet with Juhas and that Plaintiff could only speak about this issue with Samuels.

28. Samuels also informed Plaintiff that he would follow up with her regarding her complaints of gender/sexual orientation discrimination, harassment, and hostile work environment, but he never properly investigated and/or addressed her concerns, effectively dismissing and/or condoning the discrimination, harassment, and hostile work environment that she had been subjected to by him and Witherspoon.

**-Disability/Associational Disability Discrimination-**

29. In addition to the foregoing discrimination, hostility, and animosity based on Plaintiff's gender/sexual orientation, Plaintiff also suffered from discrimination based on her own and her daughter's serious health conditions and retaliation for her requested medical accommodations.

30. Plaintiff has and continues to suffer from ADA-qualifying disabilities, including but not limited to ankle/leg conditions, depression, and anxiety (as well as other mental-health related complications/conditions).

31. As a result of her aforesaid health conditions, Plaintiff suffered from pain, mobility issues, sleeplessness, feelings of hopelessness, and panic; which (at times) limited her ability to perform some daily life activities, such as sleeping, focusing, walking, and working (among other daily life activities).

32. Despite Plaintiff's aforesaid health conditions and limitations, she was able to perform the essential functions of her position; however, she (at times) required some reasonable medical accommodations (discussed further *infra*).

33. For example, in or about September of 2024, Plaintiff injured her ankle outside of work.

34. On or about September 27, 2024, Plaintiff's doctor advised her to stay off her ankle as much as possible and perform light duty work (a reasonable accommodation under the ADA), beginning on or about September 29, 2024.

35. However, when Plaintiff requested the ability to perform light duty work from Defendant, her reasonable accommodation request was outright denied, with Samuels, stating only that Plaintiff was a "liability" and that "there is no light duty for supervisors."

36. Defendant's management immediately rejected Plaintiff's request for light duty work, without properly engaging in any interactive process or providing a legitimate reason for why (as required by the ADA) they could not accommodate Plaintiff's light duty work.

37. Defendant could easily have accommodated Plaintiff's request for light duty work by assigning her to office work, and the superintendent could have checked the status of her assigned buildings *if necessary* (just one of Plaintiff several job duties she temporarily requested to refrain from performing).

38. Instead, Defendant's management refused to accommodate Plaintiff or allow her to return to work until on or about October 16, 2024, ***only after which***, she was suddenly required to work the aforesaid "difficult" weekend shifts, in a brace, while wearing extra-large sneakers to support her ankle.

39. Plaintiff additionally believes that she was subjected to discrimination and retaliation for being negatively associated with her daughter's health condition, following her request for time off to care for her daughter, who suffers from ADA-qualifying serious heart conditions and related complications.

40. For example, on or about February 24, 2025, Plaintiff requested just a few days off from work to attend testing related to her daughter's medical needs.

41. Plaintiff apprised only Witherspoon and Human Resources ("HR") of her request for time off from work to care for her daughter's health conditions.

42. However, while Plaintiff was out of work on the very brief few days of medical leave to care for her daughter's serious health conditions, she was contacted multiple times by other employees of Defendant regarding her absence, the reason for her leave, and her daughter's health conditions – despite that she had never disclosed the same to her co-workers.

43. Upon information and belief, Defendant's management and/or HR improperly disclosed information regarding Plaintiff's leave and/or her daughter's health conditions to other employees without her consent – thereby disseminating her daughter's personal health information.

44. This aforesaid unauthorized disclosure of Plaintiff's daughter's aforesaid health conditions violated Plaintiff's confidentiality and contributed to the hostile work environment and emotional distress she was already being subjected to.

45. Plaintiff further believes and therefore avers that it led to the perception by her colleagues and/or Defendant's management that she was distracted, unreliable, or less committed in and outside of work as a result of her daughter's serious health conditions.

46. Because of the embarrassment and hostility displayed by Defendant's management and/or co-workers, as well as fear of being perceived as being unable to perform her job duties and potentially being terminated, Plaintiff was forced to find alternative care for her daughter.

47. As a result of the aforementioned discriminatory, hostile, and harassing treatment she had been subjected to for being negatively associated with her daughter's health conditions, Plaintiff suffered a severe flare-up of her aforesaid mental health conditions in or about June of 2025, such that she required a short leave of absence to care and treat the same (another very reasonable accommodation under the ADA).

48. Plaintiff thereafter commenced a medical leave of absence on or about June 24, 2025.

49. Plaintiff informed Defendant's management that while she was not yet eligible for protected leave pursuant to the FMLA upon commencement of her leave, she would plan to exercise those rights when she became eligible for FMLA, on or about July 15, 2025, while already out on the aforesaid ADA-qualifying medical leave.

50. However, on or about July 15, 2025, while Plaintiff was still out on a medical leave of absence for her ADA-qualifying disabilities and **on the same day that Plaintiff became eligible for leave pursuant to the FMLA,** Plaintiff received a letter from Defendant abruptly terminating her employment due to an alleged job elimination.

51. Defendant's purported reason for Plaintiff's termination is completely false and pretextual.

52. Rather, there is no doubt that Plaintiff's gender/sexual orientation, and both her and her daughter's serious health conditions played motivating and/or determinative parts in

Plaintiff's termination because: (1) throughout Plaintiff's employment for Defendant she had been a hard-working and highly competent employee; (2) Defendant's *own termination communication* (a letter dated July 15, 2025) expressly referenced Plaintiff's pending leave request, stating, "as you know, you are currently in the process of submitting paperwork to support a LOA/FMLA" – **directly linking Plaintiff's termination to her protected leave activity** and evidencing her desire to take FMLA leave as soon as she became eligible as she was actively filling out paperwork for FMLA and requesting to utilize the same[2]; (3) despite informing Plaintiff that her position was eliminated due to "budget cuts," Defendant retained at least two non-disabled and/or non-lesbian supervisors, holding the same position as Plaintiff, who had far less tenure and experience than Plaintiff; (4) Plaintiff was terminated in *very* close proximity to her requests for/utilization of reasonable medical accommodations for her own medical conditions; and (5) Plaintiff was terminated in very close proximity to her complaints of unfair treatment as a result of the discrimination, retaliation, and a hostile work environment she was subjected to by Defendant's management.

53. Defendant failed to properly accommodate Plaintiff by outright rejecting her request for light duty work, terminating her while still out on a medical leave of absence, and/or failing to hold her job during the same.

54. Thus, Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of: (1) her gender and/or

---

[2] Courts have held that the FMLA is designed to protect "pre-eligible" employees, and an employer can be held liable under FMLA for interference and/or retaliation when an employee makes his or her intent to take future FMLA leave, even if the employee was not eligible when he or she made the request. *See Sine v. Rockhill Mennonite Home*, 275 F. Supp. 3d 538, 543-44 (E.D. Pa. 2017)(holding that the FMLA protects "a pre-eligible employee who provides notice of intent to take future FMLA leave."); *see also Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1274-75 (11th Cir. 2012)(holding an employee's FMLA interference and retaliation claims should not be dismissed where an employee who prior to being eligible under the FMLA requested FMLA leave for the birth of her child that would commence after she was eligible because the FMLA protects pre-eligibility request for post-eligibility leave).

sexual orientation; (2) her actual/perceived/record of health conditions; (3) her requests for reasonable medical accommodations; (4) for being negatively associated with her daughter's serious health conditions; (5) for being perceived as too distracted in and outside of work due to dealing with her daughter's serious health conditions; (6) for being perceived as eventually having to take additional time off from work, including protected FMLA leave to care for her and her daughter's health problems; (7) her expressed complaints of discrimination, retaliation, and a hostile work environment; and (8) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

## COUNT I
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
## ([1] Gender/Sexual Orientation Discrimination; [2] Hostile Work Environment; & [3] Retaliation)

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of her gender and/or sexual orientation.

57. Plaintiff complained to Defendant's management about the aforesaid discrimination to no avail, and instead of properly investigating or remedying her concerns, Defendant's management subjected her to increased hostility, animosity, disparate treatment, and retaliation (*i.e.,* changing her schedule).

58. Plaintiff was then abruptly terminated on or about July 15, 2025, for completely pretextual reasons, in close proximity to her complaints of/objections to gender and/or sexual orientation discrimination.

59. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment and retaliation as a result of her gender, sexual orientation, and complaints of/objections to the same.

60. Plaintiff further believes and therefore avers that her gender and/or sexual orientation, and complaints of unfair treatment regarding the same were motivating and/or determinative factors in the termination of her employment by Defendant.

61. These actions as aforesaid constitute violations of Title VII, as amended.

**COUNT II**
**<u>Violations of the Americans with Disabilities Act, as Amended (“ADA”)</u>**
**([1] Associational Discrimination & [2] Hostile Work Environment)**

62. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63. Plaintiff’s daughter suffered from qualifying health conditions under the ADA, including but not limited to a severe and ongoing heart condition requiring continuous treatment.

64. At all relevant times hereto, Defendant knew of Plaintiff’s daughter’s disabilities and disclosed this information to other employees of Defendant’s.

65. Plaintiff was terminated by Defendant for completely pretextual reasons shortly after she requested/utilized time off from work to care for her daughter’s medical conditions.

66. Upon information and belief, Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation by Defendant for: (a) being perceived as distracted for dealing with her daughter’s health problems in and outside of work; (b) being perceived as eventually having to take protected FMLA leave to care for her daughter’s health problems; and (c) for other reasons in association with her daughter’s health problems.

67. These actions as aforesaid constitute violations of the ADA, as amended.

**COUNT III**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment & [4] Failure to Accommodate)**

68. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69. Plaintiff suffers from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

70. Plaintiff kept Defendant's management informed of her disabilities and need for medical accommodations throughout her employment with Defendant.

71. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

72. Plaintiff requested reasonable accommodations from Defendant, including but not limited to intermittent and/or block medical leave.

73. Plaintiff was terminated from her employment with Defendant on or about July 15, 2025, for completely pretextual reasons, in close proximity to requesting/utilizing reasonable medical accommodations and **while still out on medical leave**.

74. Defendant failed to properly accommodate Plaintiff by outright rejecting her request for light duty work, terminating her while still out on a medical leave of absence, and/or failing to hold her job open during the same.

75. Plaintiff believes and therefore avers that she was subjected to discrimination, retaliation, and a hostile work environment because of: (1) her actual/perceived/record of health

conditions; (2) her requests for reasonable accommodations; and (3) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

76. Plaintiff also believes and therefore avers that her disabilities were motivating and/or determinative factors in the termination of her employment by Defendant.

77. These actions as aforesaid constitute violations of the ADA.

**COUNT IV**
**Violations of The Family and Medical Leave Act ("FMLA")**
**([1] Retaliation & [2] Interference)**

78. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

79. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii), as of July 15, 2025, while out on a medical leave of absence for her aforementioned disabilities.

80. Plaintiff requested leave from Defendant, her employer, with whom she would have been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i), as of July 15, 2025, while out on the aforesaid medical leave of absence.

81. Plaintiff had at least 1,250 hours of service with Defendant during the time she became eligible for FMLA during her aforesaid medical leave of absence, had she not been terminated.

82. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees at Plaintiff's location of work and within a seventy-five (75) mile radius surrounding such location, for each working day during each of the twenty (20) or more calendar work weeks in the current or preceding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

83. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

84. Plaintiff was abruptly terminated on the day that she became eligible for FMLA leave and while still out on a medical leave of absence.

85. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; and (4) making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA.

86. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority; Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands Defendant until the date of verdict;

C. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be

appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: October 14, 2026

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Zakia Monique Gilyard | : | CIVIL ACTION |
| v. | : | |
| Temple University of the Commonwealth System of Higher Education d/b/a Temple University | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 10/14/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:______________________ Judge:_________________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:____________________________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):________________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*___________________________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

GILYARD, ZAKIA MONIQUE

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

TEMPLE UNIVERSITY OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION d/b/a TEMPLE UNIVERSITY

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**:
ADA (42USC12101); FMLA (29USC2601); Title VII (42USC2000)

Brief description of cause:
Violations of the ADA, FMLA, Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 10/14/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______